STATE of Arkansas *v.* Floyd HOFFMAN

CR 81-4                                                   617 S.W. 2d 16

Supreme Court of Arkansas
Opinion delivered June 15, 1981

*Steve Clark*, Atty. Gen., by: *Victra L. Fewell*, Asst. Atty. Gen., for appellant.

*Richard E. Holiman* and *Bob Dawson*, for appellee.

GEORGE ROSE SMITH, Justice. Floyd Hoffman and his wife Jerrie were jointly charged with theft of property from VIP #4, a self-service filling station at Sherwood. The two defendants, after their pleas of not guilty, were represented by separate attorneys and filed various separate motions. Floyd alone filed a motion to suppress evidence obtained by means of an assertedly invalid search warrant. The trial judge entered an order which states that, "after a hearing on the evidence," the motion to suppress is granted. The State, in taking this interlocutory appeal, designated for the appeal only that part of the record containing the search warrant and the suppression order. Floyd's counsel additionally designated the affidavit for the search warrant and "any recorded testimony taken in the form of argument," none being actually supplied. Floyd is in fact the only appellee, though counsel have styled their briefs as if both the accused were appellees.

Various challenges to the affidavit are made, but we rest our affirmance of the suppression order on the single ground that the affidavit fails to establish the necessary "reasonable cause to believe" that any *specific* documents would actually be found by a search of the premises described in the affidavit. Criminal Procedure Rule 13.1 (d). We quote the body of the affidavit:

The undersigned, being duly sworn, deposes and says:

That he has reason to believe that on the premises known as the VIP # 4, at the Sherwood exit of U.S. 67 and 167 at Trammell Road at the southeast corner of the U.S. 67 access road and Trammell Road, a self-service gas station, a one story concrete block building, white in color, in Pulaski County, Arkansas, there is now being concealed certain property, namely documentary evidence relating to the cash receipts of the station, the sales of gasoline through the station's pumps, other documents pertaining to the apparent falsification of pump readings and receipts on daily sales reports, money and deposit slips, personal and

business, said evidence tending to show a violation of Arkansas law.

That the facts tending to establish the foregoing grounds for issuance of a search and seizure warrant are as follows:

I am the owner and operator of VIP #4, a self service gas station at the intersection of U.S. 67-167 and Trammell Road, Sherwood, Pulaski County, Arkansas. Mrs. Jerri Hoffman is my employee. Her husband helps her and they live on the premises in the building. This station is open every day but Sunday.

As a part of their duties, they prepare daily sales and receipt reports. These reports show the readings of the eight pumps every day at 11:00 A.M. The readings are added up, and the total from the previous day is subtracted. This should give the total gallons sold.

For several months, I have suspected that the pump readings on the reports have been falsified to show that less gas had been sold than actually was. For instance, the final April, 1978, report (which was not immediately caught because of my office's oversight) with actual readings showed a shortage of more than $6,900 gas. The actual readings were placed on the reports then. The reports of August, September, and October also had substantial shortages.

On November 13, 1978, the meter readings were noted on the report. (Exhibit A) At 9:30 p.m., Patt Foley, an investigator with the Prosecuting Attorney's Office, read the pumps and reported them to his office. (Exhibit B) The November 14, 1978, report (Exhibit C) shows readings lower than the readings obtained by Foley the previous day. (Exhibit D compares them.) This confirms to me that meter readings are actively being falsified on the reports by Mr. and Mrs. Hoffman. If so, they have not been remitting the full amount received contrary to their duties, and I reasonably believe that they are stealing from me in violation of

Arkansas law. This business has not produced much income since the Horrmans [Hoffmans] have worked there. I have been advised by the Prosecuting Attorney to seek an audit, and I will do so.

[Signed] Wayne H. Babbitt
Affiant

Exhibits A and C to the affidavit were photocopies of the Hoffmans' daily reports for November 13 and 14. The reports, in tabular form, listed the numerical readings for the various pumps for regular and for premium gasoline, the total cash received for regular and for premium, and a few charge account sales by names and amounts. Exhibit B was a photocopy of Investigator Foley's report of his readings at 9:30 p.m. on November 13, identifying the different pumps. Exhibit D was a photocopy of Foley's comparisons which reflect, for example, that one pump was shown by the Hoffmans as having a reading of only 941404 on November 14, but Foley had recorded that pump as reading 942891 on the preceding evening, which Foley interpreted as indicating a shortage of 148.7 gallons. Three other similar numerical shortages are shown.

It can be deduced from the affidavit and its exhibits that for several months Dr. Babbitt had suspected that the Hoffmans were not reporting all the gasoline they sold. Foley's investigation, confined as it was to a single day, suggests that the Hoffmans were able to turn back the meters on the pumps as a means of concealing their supposed day-to-day thefts of cash. The State has not seen fit to bring up a record of the evidence and exhibits that may have been introduced below; so we have only the affidavit and the warrant on which to reach a conclusion.

Under both the Federal and State constitutions the issuance of a search warrant must be based upon an oath "particularly describing" the thing to be seized. Here, however, Dr. Babbitt's affidavit shows how far from certain he was about what was to be seized: "... documentary evidence relating to the cash receipts of the station, the sales of gasoline through the station's pumps, other documents pertaining to the *apparent* falsification of pump readings

and receipts on daily sales reports, *money and deposit slips, personal and business*; said evidence tending to show a violation of Arkansas law." (Italics ours.) Nothing specific, only a dragnet description of anything incriminating that might be found in the building.

Inferences about the likely location of items are permissible, but the inferences must be reasonable. LaFave, Search and Seizure, 706 (1978). Here there is no reasonable basis for an inference that any particular document would be discovered by a search. The affidavit, it is true, does assert that the Hoffmans "prepare daily sales and receipt reports." In fact, two of those reports were attached to the affidavit. Presumably Dr. Babbitt also had the earlier ones. But why would the Hoffmans keep any records that might contradict their false reports? Why, even, would such contradicting records ever have come into existence? If the Hoffmans could turn back the pump meters, as indicated by Foley's report, it would obviously be a simple matter for them to make out the daily reports at 11:00 a.m. as they were required to do, pocket the cash receipts for perhaps the next hour or so, and then turn back the meters to the figures shown on the daily report. Under that simple plan not one document disclosing their embezzlements would ever have come into existence, none being needed. We are compelled to conclude that although Dr. Babbitt may have had a solid basis for suspecting that he was being defrauded — a fact that might have been shown, as the prosecuting attorney suggested, by an audit — he had no reasonable basis for a description of "the thing to be seized." The Constitution does not permit the police to search a person's home in the vague hope that something of an incriminating nature may be discovered.

Affirmed.

ADKISSON, C.J., and HAYS, J., dissent.

RICHARD B. ADKISSON, Chief Justice, dissenting. I dissent from the majority's holding that "the affidavit fails to establish the necessary 'reasonable cause to believe' that any *specific* documents would actually be found by a search of the premises described in the affidavit." On the contrary,

the affidavit made by the owner of the premises which were searched supplies ample reason to believe that specific documents would be found: First, it was the Hoffmans' duty to prepare as business records daily sales and receipt reports showing readings of the eight gasoline pumps at the business. Second, the affiant stated that in April a $6,900 shortage was disclosed by comparing the reports of the Hoffmans with the actual pump readings; also, the reports for August, September and October indicated substantial shortages. Third, on November 13 an investigator with the prosecuting attorney's office took a meter reading of the gasoline pumps and when this reading was compared with the reports received from the Hoffmans a substantial shortage was disclosed. And fourth, the Hoffmans lived on and operated this service station business out of the premises for which the search warrant was issued.

It is reasonable to conclude as did the affiant that the Hoffmans were stealing after consistent shortages were reflected by examining the August, September, and October reports. The affiant's suspicions were specifically confirmed by an investigation conducted by the prosecuting attorney's office, the results of which were attached to and made a part of the affidavit for the search warrant.

Where else would the daily sales and receipt reports be located if not on the business premises? These records were required to be kept and common sense tells us that business records are kept at the business.

The majority pose a phantom situation in which the Hoffmans would not keep damaging records reflecting their theft of the owner's funds. Viewed objectively, it is easy to imagine how a thief would act to avoid detection, but experience tells us thieves do not always act reasonably. People act unwisely by stealing and generally are not omniscient in covering up their crimes. Under the majority's reasoning no search warrant could be issued if there was any conceivable set of circumstances demonstrating that evidence of the theft would not be located on the premises to be searched.

I am authorized to state that Hays, J., joins me in this dissent.